Uniform Certification of Questions of Law Rule 1:03

WEST'S MASSACHUSETTS RULES OF COURT
RULES OF THE SUPREME JUDICIAL COURT
CHAPTER ONE. GENERAL RULES
© 2005 Thomson/WestCurrent with Amendments received through 01/15/2005

**RULE 1:03 UNIFORM CERTIFICATION OF QUESTIONS OF LAW**

**Section 1. Authority to Answer Certain Questions of Law.** This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.
**Section 2. Method of Invoking.** This rule may be invoked by an order of any of the courts referred to in Section 1 upon that court's own motion or upon the motion of any party to the cause.
**Section 3. Contents of Certification Order.** A certification order shall set forth
 (1) the question of law to be answered; and
 (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.
**Section 4. Preparation of Certification Order.** The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to this court by the clerk of the certifying court under its official seal. This court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of this court, the record or portion thereof may be necessary in answering the questions.
**Section 5. Costs of Certification.** Fees and costs shall be the same as in civil appeals docketed before this court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.
**Section 6. Briefs and Arguments.** Proceedings in this court shall be those provided in these rules, the Massachusetts Rules of Appellate Procedure or statutes governing briefs and arguments, so far as reasonably applicable.
 **Section 7. Opinion.** The written opinion of this court stating the law governing the questions certified shall be sent by the clerk under the seal of this court to the certifying court and to the parties.
**Section 8. Power to Certify.** This court on its own motion or the motion of any party may order certification of questions of law to the highest court of any state when it appears to the certifying court that there are involved in any proceeding before the court questions of law of the receiving state which may be determinative of the cause then pending in the certifying court and it appears to the certifying court that there are no controlling precedents in the decisions of the highest court or intermediate appellate courts of the receiving state.

**Section 9. Procedure on Certifying.** The procedures for certification from this state to the receiving state shall be those provided in the laws of the receiving state.

**Section 10. Uniformity of Interpretation.** This rule shall be so construed as to effectuate its general purpose to make uniform the law of those states which adopt it; or enact a uniform certification statute.

**Section 11. Short Title.** This rule may be cited as the Uniform Certification of Questions of Law Rule.

Uniform Certification of Questions of Law Rule 1:03
MA R S CT Rule 1:03
END OF DOCUMENT
(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:

MARIE MAUD CRICHLOW,
        Debtor

Chapter 13
Case No. 04-18735-RS

**MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM AUTOMATIC STAY**

*I. Introduction*

The matter before the Court is whether Marie Maud Crichlow (the "Debtor") retains a post-foreclosure interest in real property such that she can cure a default under 11 U.S.C. §1322 (c)(1). Sandra DaSilva ("DaSilva"), the high bidder at the foreclosure auction, filed a motion for relief seeking authority to evict the Debtor. The Debtor objected arguing that she is entitled to cure her default and maintain possession of the premises. For the reasons set forth below, I will enter an order granting the motion for relief. The following constitute my findings of fact and conclusions of law.

*II. Background*

The facts in this case are not in dispute.[1] On October 21, 2004, DaSilva was the prevailing bidder at a properly conducted foreclosure sale of real property located at 59 Amor

---

[1] The Debtor went to lengths to assert that only for the purposes of this motion she was not disputing DaSilva's factual assertions. She did not give any grounds to suggest that the facts which DaSilva presented were in error.

1

Road, Milton, Massachusetts (the "Property"). On that date, the foreclosing mortgagee (the Mortgagee") and DaSilva signed the Memorandum of Terms and Conditions of Sale ( the "Memorandum") which verified that DaSilva had paid the requisite deposit. The Memorandum provided on page one that the "sale shall not be deemed completed until the Buyer has made his or her deposit and has signed this Memorandum of Sale." The Memorandum contained further provisions for the subsequent payment of the balance.

On October 27, 2004, the Mortgagee signed a Massachusetts Foreclosure Deed by Corporation in favor of DaSilva. Late that afternoon, the Debtor filed for relief under Chapter 13 of the United States Bankruptcy Code. On November 15, 2004, the deed was recorded at the registry of deeds. On November 17, 2004, the Debtor filed her Chapter 13 Plan which provided for payment of the default under her mortgage with the Mortgagee.

Thereafter, DaSilva filed her motion for relief from automatic stay (the "Motion") to evict the Debtor and obtain possession of the Property. As grounds, DaSilva explained that the Debtor no longer had an interest in the Property and was no longer entitled to reside there as a result of the foreclosure sale.

The Debtor filed an objection and incorporated a memorandum of law in support. In these pleadings, the Debtor asserts that the steps that the Mortgagee took pre-petition to foreclose on its mortgage did not result in a sale of the Property as that term is defined in Massachusetts. As such, she argues that §1322 (c)(1) permits her to file a plan which provides for the cure of her defaults under the mortgage. That subsection provides:

> (C) Notwithstanding subsection (b)(2) [modification of the rights
> of secured claim holders] and applicable nonbankruptcy law –

2

> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . .

11 U.S.C. §1322(c)(1).

The Debtor urges that this case does not rest on whether or when the Debtor lost her equity of redemption. Indeed, the Debtor does not offer any grounds to refute that the Debtor lost her equity of redemption. She explains that the issue is at what point is a property considered sold and that the definition must be subject to case law of Massachusetts which is in disarray on this subject.

The Debtor urges the Court to follow the cases of *Schanberg v. Automobile Ins. Co. Of Hartford*, 285 Mass. 316, 189 N.E. 105 (1934) and *Beal v. Attleborough Sav. Bank*, 248 Mass. 342, 142 N.E. 789 (1924). She contends that these cases stand for the proposition that a property cannot be considered sold at foreclosure until the deed has been recorded, consistent with Mass. Gen. Laws ch. 183 § 1.[2] Even if I were to rule that under state law the Property was sold, she contends that 11 U.S.C. § 1322(c) preempts contrary state law and requires a completed sale, the delivery of a deed, in order to satisfy the statute, citing for support *In re Beeman*, 235 B.R. 519 (Bankr. D. N.H. 1999). The Debtor argues that, because after the foreclosure additional steps were required, the sale was not completed at the foreclosure sale, she retains an interest in the Property and is entitled to cure any defaults under the mortgage. As such, relief from stay should

---

[2] I will not consider this argument. The referenced statute addresses conveyances by deed and provides that a deed by a grantor is sufficient to convey land. *See e.g. Jacobs v. Jacobs*, 321 Mass. 350, 73 N.E. 2d 477 (1947). Subsection 4 of Mass. Gen. Laws ch. 183 requires that the deed be recorded in the proper registry for it to be valid against any person other than the grantor and anyone having actual notice.

be denied because DaSilva has no interest in the Property and the recording of the deed post-petition violated the automatic stay.

In response, DaSilva filed a memorandum of law in which she asserts that under Massachusetts law, the Debtor's equitable interest in the Property terminated upon the execution of the Memorandum of Sale, citing for support *In re Grassie*, 293 B.R. 829, 831 (Bankr. D. Mass 2003), *In re Dow*, 250 B.R. 6, 8 (Bankr. D. Mass. 2000), *Williams v. Resolution GGF, OY*, 417 Mass. 377, 630 N.E. 2d 581 (1994) and *Outpost Café Inc. v. Fairhaven Savings Bank*, 3 Mass. App. Ct. 1, 322 N.E. 2d 183 (1975). She also contends that such holdings comport with the language set forth in the Massachusetts foreclosure statute, Mass. Gen. Laws ch. 244 and the general practice governing foreclosure. She further argues that to inject an element of uncertainty into a process with existing firm procedures would be unsound.

## III. Analysis

11 U.S.C. §1322(c)(1) was enacted in 1994 in response to those cases which prevented a debtor from curing a default after a court order permitting foreclosure but prior to the foreclosure sale. See HR Rep 103-835, 103rd Cong., 2nd Sess 52 (Oct. 4, 1994): 140 Cong. Rec. H10769 (Oct. 4, 1994)). This portion of the legislative history refers to the "completion of a foreclosure sale under applicable nonbankruptcy law." *Id.* The Senate version explains that the statute "will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs." 140 Cong. Rec. S14462 (Oct. 6, 1994) (statement of Sen. Grassley).

Both the statute and the legislative history, to the extent relied upon by courts that have found the statute ambiguous, have created a great deal more discussion than the intended

4

clarification. *See generally*, 2 Keith M. Lundin, *Chapter 13 Bankruptcy* §130.1, at 130-13 through 130-26 (3d ed. 2000). *See also In re Beeman*, 235 B.R. 519, 534 (Bankr. D. N.H. 1999) ("There are generally two schools of thought with respect to § 1322(c)(1). On approach is to find that the language of § 1322(c)(1) is unambiguous and conclude that a Chapter 13 debtor's rights to cure and reinstate are cut off as of the date of the foreclosure auction. . . . The contrary approach is to find that the statutory language is ambiguous and thus turn to legislative history in an effort to determine the legislature's intent. Courts following the latter approach generally conclude that the statutory language is intended to cut off the debtor's right to cure and reinstate as of the point when a foreclosure sale is complete pursuant to state law."), *In re Townsville*, 268 B.R. 95, 112-115 (Bankr. E.D. Penn. 2001) (examining collection of cases, concluding statute ambiguous and, after lengthy discussion of legislative history, that Congress intended default right terminated at foreclosure sale as determined by state law) and *In re Bobo*, 246 B.R. 453 (Bankr. D.C. 2000) (reviewing cases and concluding statute is unambiguous and provides for termination of cure upon declaration of highest bidder)

      The first step in determining the application of the statute is an examination of the language itself. *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989). If the text of the statute is "sufficiently clear, the text assumes overriding importance." *In re Weinstein*, 272 F.3d 39, 43 (1st Cir. 2001). Due weight must be given to the words of the statute so that none are rendered superfluous. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'").

      The subsection of the statute starts with an indication that relevant state law is inapplicable. 2 Keith M. Lundin, *Chapter 13 Bankruptcy* §130.1, at 130-24 (3d ed.

2000)(acknowledging introductory sentence "signaling a purely federal rule to follow."). It is followed by reference to state law, "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." Courts that have found the statute unambiguous have reached different conclusions as to how the subsequent reference to state law should be treated. *Compare Homeside Lending, Inc. v. Denny (In re Denny)*, 242 B.R. 593, 597 (Bankr. D. Md. 1999) (deciding modifying phrase requires "sale which complies with procedural regularity afforded under applicable law.") *with In re Beeman*, 235 B.R. 519, 526 (Bankr. D. N.H. 1999) (concluding statute "modifies 'sold at a foreclosure sale' with 'that is conducted in accordance with applicable nonbankruptcy law.' This language indicates that Congress intended state law to be determinative of when a foreclosure sale is complete." Therefore, the latter part of the phrase mandates that the foreclosure sale must have been conducted in accordance with state law."), and *M.C. Schinck v. Stephens (In re Stephens)*, 221 B.R. 290, 294 n.10 (Bankr. D. Me. 1998) (concluding entire phrase requires examination of state law because "I see no way of construing §1322(c)(1) without looking to state foreclosure law."). Courts that have found the statute ambiguous have relied upon the potential different meanings of the state law reference. *See Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 917 (7th Cir. 2003) ("Although this provision may be read as simply addressing the manner in which the sheriff's sale is to be conducted, it also may be read as permitting state law to define the point at which the forfeiture sale ought to be considered complete.").

I conclude that the words of the statute are sufficiently clear and, as such, I need not look for guidance into resources such as the conflicting legislative history. *McCarn v. WyHy Fed. Credit Union (In re McCarn)*, 218 B.R. 154, 160-61 & n. 5 (10th Cir. B.A.P. 1998) (recognizing

inconsistency in legislative history). The phrase in the statute that refers to "conducted in accordance with applicable nonbankrutpcy law" is a requirement that the foreclosure was held in compliance with applicable state laws. To rule that this phrase requires that I examine the issue under state law removes from the statute the word 'conducted', a construction I am counseled to avoid. The phrase "sold at a foreclosure sale" refers to the sale that occurs at a foreclosure auction not pursuant to or after. *In re Bobo*, 246 B.R. at 457. To define the word 'sold' as the point at which a deed is transferred to the prevailing bidder subsequent to the date of the auction likewise removes the words 'foreclosure sale' from the statute.

I do not agree with *In re Bobo* and other such cases that attempt to remove all state law from their analysis of the statute. Indeed, even in *Bobo*, the court stated that the law of the state "must be consulted to determine whether there have been steps that qualify as a 'foreclosure sale' withing the meaning of § 1322 (c)(1) and to determine whether those steps comported with state law requirements. But federal law, . . . determines whether the state law steps suffice . . . " *Id.* The statute makes two references to state law, how the sale was conducted and the point at which the property was sold at the auction. That I must turn to state law to determine whether those two requirements of the statute are met does not render the statute ambiguous or require an in-depth analysis of when a title transfers under Massachusetts foreclosure law.

This conclusion comports with the language of the statute. Moreover, it avoids an uncertainty under state foreclosure law that is certain to arise were I to rule otherwise. As the court in Bobo explained:

> The states' interest in the integrity of their foreclosure sale process
> as [*BFP v. Resolution Trust Corp.* 511 U.S. 531 (1994)]
> demonstrates, is an important interest, and this court will not

7

> interpret § 1322(c)(1) in a manner that impinges on the states' interests in the efficiency and clarity of that process – by altering the rights acquired under state law by the highest bidder at a prepetition foreclosure auction sale – absent a reasonably explicit congressional expression of intent.

*Id.* at 458. *See also In re Townsville*, 268 B.R. 95, 118 n. 25 (Bankr. E.D. Pa. 2001) (enumerating policy factors courts have examined in determining foreclosure date is sale date).

11 U.S.C. § 1322(c)(1) allows the Debtor to cure her default unless the Property was sold at a foreclosure sale which was conducted in accordance with Massachusetts foreclosure laws. The Debtor did not offer any credible evidence that the foreclosure sale was conducted other than in accordance with the Massachusetts foreclosure laws. As explained below, because the Memorandum of Sale was signed at the sale, the Property was sold at the foreclosure sale. As such the Debtor is not entitled to the cure her mortgage default.

Were I to decide the matter based upon an examination of the definition of 'sold at foreclosure sale' under the case law of Massachusetts, I would not alter my conclusion. That is, were I to adopt the Debtor's argument that 11 U.S.C. § 1322(c)(1) must be analyzed based upon how Massachusetts defines the term 'sold at a foreclosure sale', I would conclude that the Property was sold when the auctioneer and DaSilva signed the Memorandum of Sale.

One of the first cases to which the Debtor cites in support of her argument is *Beal v. Attleboro Sav. Bank*, 248 Mass 342, 142 N.E. 789 (1924). In that case, the mortgagor sued the foreclosing mortgagee for an accounting of the rents and profits which the mortgagee had collected for the month between the foreclosure sale and the delivery of the deed. 248 Mass. at 343. The Supreme Judicial Court explained that the "auction sale was in effect a mere contract

8

of sale. The sale was not executed until the deed was delivered, when the title passed to the purchaser." *Id.* The court concluded that because the mortgagor held titled to and was entitled to occupy the premises until the deed was executed and had an equity of redemption until that time, the mortgagor collected the rents and profits for the benefit of the mortgagor. *Id.* at 345.

Five years later, Justice Carroll clarified and amended his holding in *Beal* in his decision, *White v. Marcarelli*, 267 Mass. 596, 166 N.E. 734 (1929). In that case, the second mortgagee intervened and claimed that he had "a right to redeem after the auction sale and before the conveyance is made." *Id.* at 599. The court, however, ruled that

> If a foreclosure sale is fairly conducted and there is no defect in the proceedings, the right of the intervener to redeem is gone when the contract of sale was made with the purchaser at auction. *Brown v. Wentworth*, 181 Mass 49, 62 N.E. 984. See G.L. c. 244 § 22. *Beal v. Attleborough Savings Bank*, 248 Mass. 342, 142 N.E. 789, is not in conflict, and is not an authority for the contention that the right to redeem continues until the conveyance is made. . . . Until the conveyance is made a mortgagor has an interest in the property and has rights against the mortgagee and the relation between them is not entirely at an end when the auction sale takes place. . . . Until the contract of sale is completed the mortgagor has an equity in the property, but it is not strictly accurate to designate this interest as an equity of redemption. The mortgagor, after a valid auction sale under a power of sale in the mortgage deed, has no right to redeem, although he has an ownership of the equity.

*Id.*

A few years later, the Supreme Judicial Court decided *Schanberg v. Automobile Co. of Hartford Conn.*, 285 Mass 316, 189 N.E. 105 (1934). In that case, a fire destroyed the property on which the a foreclosure auction had taken place days prior. The defendant insurance company denied coverage on the grounds that the property had been sold at the auction in violation of the contractual provision voiding the policy if the insured premises were sold without the company's

9

assent. The court recognized that under Massachusetts law, such provisions "are strictly construed against the insured, and the general rule is that such a condition refers only to an absolute transfer of the entire interest of the insured, completely devesting him of his insurable interest. Any sale or transfer short of this is not within the scope of the condition." 285 Mass. at 318. *See also Clinton v. Norfolk Mutual Fire Ins*. Co., 176 Mass. 486, 489, 57 N.E. 998, 999 (1900).

In order to determine the time of the absolute transfer of the entire interest, the court looked to the holdings of *White v. Macarelli* and *Beal v. Attleborough Savings Bank*. Because the mortgagors in those cases were considered to have some residual rights in the foreclosed properties, the court ruled that the property was not sold under the definition of the policy as construed by the strict state law.

The Appeals Court of Massachusetts was asked to examine this issue in *Outpost Café, Inc. v. Fairhaven Savings Bank*, 3 Mass. App. Ct. 1, 322 N.E. 2d 183 (1975). In that case, the mortgagor attempt to tender the amount of the mortgage after the foreclosure sale but before the deed had been recorded. The court had to decide the date of the sale as defined by the statute which allows redemption up to the time that "the land has been sold pursuant to a power of sale contained in the mortgage deed . . . " 3 Mass. App. Ct. at 3 (citing to Mass. Gen. Laws ch. 244, § 18).

The court cited several sources in support of its conclusion that the sale occurred at least as early as when the mortgagee and the purchaser executed the memorandum of sale. First, it cited to a case in which the Supreme Judicial Court referred to the foreclosure sale as occurring at the auction with the recording of the deed to occur at a later time. *Id. citing Conway Sav. Bank*

10

*v. Vinick*, 287 Mass. 448, 453, 192 N.E. 81 (1934) ("The plaintiff's agent made a bid of $5,000, there was no other bid, and the property was sold to the plaintiff for that amount. A foreclosure deed of the property to the plaintiff was later duly recorded.") It then looked to the numerous subsections of Mass. Gen. Laws. Ch. 244 wherein the word sold is used to refer to the auction sale especially subsection 14, titled Foreclosure Under Power of Sale; Procedure; Notice; Form, which provides that

> A notice of sale in the above form, published in accordance with the power in the mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold, and the deed thereunder shall convey the premises, . . .

Mass. Gen. Laws ch. 244, § 14.

The court concluded that these sections when read together indicate that the sale occurred on the date of the foreclosure for purposes of subsection 18. The appeals court also reviewed relevant case law, including those cases listed above, and concluded that they support the conclusion it had reached under its statutory construction analysis. 3 Mass. App. Ct. at 7, 322 N.E. 2d at 187. Because the equity of redemption was barred at least as early as the point of signing the memorandum of sale, the property was sold at that point and the mortgagee was unable to tender after that point. *Id*. *See also Colletti v. Mass. Automatic Transmissions, Inc. (In re Mass. Automatic Transmissions, Inc.,*, 35 B.R. 328, 330 (Bankr. D. Mass. 1983) (relying on *Outpost Café*, the court held real property not estate property as foreclosure auction successfully held 6 days pre-petition); *Kahn v. Dime Savings Bank of New York*, 1993 WL 818711 *5 (Mass. Super. 1993) ("Although *Outpost Café* did not specifically address the word

11

"sale" as it would apply to G.L. c. 140D, § 10(f) (this legislation was not enacted until 1981), where two statutes deal with the same subject, the provisions withing the statute should be interpreted harmoniously to effectuate a consistent body of law." ).

The Debtor contends that the *Schanberg, Beal, White* and *Outpost Café* cases "can be reconciled by holding in mind the statement in *White* to the effect that until the foreclosure sale is *actually* completed by delivery of deed, the mortgagor continues to have rights in the property and against the mortgagee, even if there is no longer an equity of redemption, and that *Outpost Café* is about redemption rights, not when a sale is complete." *Memorandum of Law in Support of Debtor's objection to Motion for Relief From Stay,* p. 6 (emphasis provided). This analysis is incorrect. *White* does not contain a reference to a foreclosure sale being actually completed by delivery of a deed. Instead, the case stands for the proposition that a mortgagor retains certain limited rights against the mortgagee after the "foreclosure sale is fairly conducted . . . " *Id.* at 599. These limited rights do not conflict with the constant and consistent references to the sale at the foreclosure auction. They simply ensure that a mortgagor is entitled to receive any residual amounts it is due after the mortgagee's debt has been satisfied. They do not revive the lost equity of redemption. Moreover, *Outpost Café* does address the issue of a sale as the court was required to determine when the property was sold for the purposes of Mass. Gen. Laws ch. 244, § 18.

In addition to the sound reasoning of *Outpost Café* and those bankruptcy cases which have cited it with approval, there are additional grounds to support the conclusion that the Property was sold at the foreclosure sale. Massachusetts is a title theory state. "This means that the mortgagee holds legal title to the real property and the mortgagor retains only the equity of

redemption accompanied by a right of possession. . . . *In re Tricca*, 196 B.R. 214, 217 (Bankr. D. Mass. 1996). "In order to redeem the land, the mortgagor, or other person entitled to redeem, must pay to the mortgagee the whole amount due and payable on the mortgage . . . A mortgagor in breach of a mortgage enjoys its right of redemption until the equity of redemption is foreclosed by the mortgage." *Id.*

Mass. Gen. Laws ch. 244, § 18, where applicable, entitles a mortgagor to redeem "unless the land has been sold pursuant to a power of sale . . . " In accordance with *Outpost Café*, it is uniformly held that the proper execution of the memorandum of sale terminates a mortgagee's equity of redemption. *In re Grassie*, 293 B.R. 829 831(Bankr. D. Mass. 2003) (holding supported in part by *Outpost Café*), *In re Dow*, 250 B.R. 6, 8 (Bankr. D. Mass. 2000) (same); *In re Theoclis*, 213 B.R. 880, 882 (Bankr. D. Mass. 1997) (same), *In re Hall*, 188 B.R. 476, 482 Bankr. D. Mass. 1995) (ruling estate had no interest in real property foreclosed upon one month prior to petition date). In other words, what is sold at a foreclosure sale is the equity of redemption and that is sold as of the execution of the memorandum of sale.

The Supreme Judicial Court has, in fact, recognized the foregoing consequence of the foreclosure sale:

> The defendant, as second mortgagee, having been authorized by the power to bid at the foreclosure sale, and his bid which the highest having been accepted, the deposit made, and the memorandum or certificate of sale signed by the auctioneer, became the purchaser, and nothing remained by way of performance except to execute the deed to himself, and upon deducting the expenses, to apply the purchase price in liquidation of the mortgage debt, retaining the balance if any for the benefit of those who should receive it.

*Pilok v. Bednarski*, 230 Mass. 56, 57, 119 N.E. 360 (1918). *See also Weiner v. Slovin*, 270 Mass. 392, 394, 169 N.E. 64, 65 (1930) ("When a mortgagee forecloses by a sale pursuant to a power contained in the mortgage and becomes purchaser at the sale . . . ").

This quote is not only consistent with the Memorandum of Sale which was signed in this case but also with the practice in the Commonwealth. *See e.g.* Form for Memorandum of Sale, Eno and Hovey, *Massachusetts Practice Real Estate Law*, § 696 ("I, the undersigned, hereby acknowledge that I have this day purchased at Mortgagee's Sale at Public Auction . . . ").[3] Indeed, the proposed form of foreclosure notice set forth in Mass. Gen. Laws ch. 244, § 14 provides as follows:

> By virtue and in execution of the Power of Sale contained in a certain mortgage given by _____ to _____ dated _____ and recorded with _____ Deeds, Book _____, page _____, or which mortgage the undersigned is the present holder, _____ (If by assignment, or in any fiduciary capacity, give reference.) _____ for breach of the conditions of said mortgage and for the purpose of foreclosing the same will be sold at Public Auction . . .

Based upon the language of the statutes governing foreclosure, the case law and the state practice, I conclude that were the Supreme Judicial Court confronted with the issue of when is a property, or rather the equity of redemption, sold at a foreclosure sale, it would conclude that the sale occurs when the memorandum of sale is signed.

## IV. Conclusion

On the date she filed for relief, the Debtor had lost the equity of redemption pursuant to a foreclosure sale conducted under Massachusetts law. As such, she no longer has the ability to

---

[3] In their treatise, the authors refer to the effect of the hammer falling as completing the sale "as far as the mortgagor is concerned. Thereafter, the mortgagor no longer has a right to redeem. But for the rest of the world the sale is not complete until the execution by a successful bidder of the auctioneer's memorandum of sale." *Id.* at § 10.13.

14

cure the default under the mortgage she had given the Mortgagee. Since the Debtor no longer has an interest in the Property, I will enter an order granting DaSilva relief from the automatic stay.

William C. Hillman
U.S. Bankruptcy Judge

Dated: 2/16/04

Counsel Appearing:

For the Debtor: David G. Baker  Boston, MA
For DaSilva: Leslie C. Sammon, Esq.  Boston, MA

15

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| In re:<br><br>Marie Maud Crichlow<br><br>Debtor | BANKRUPTCY APPEAL<br><br>Civil Action No. 05-10653-MLW |
|---|---|

## MOTION FOR CERTIFICATION OF QUESTION TO SUPREME JUDICIAL COURT

NOW COMES Marie Maud Crichlow, debtor/appellant in the above captioned matter, and respectfully moves the Court to certify to the Supreme Judicial Court of the Commonwealth of Massachusetts, pursuant to that Court's Rule 1:03, a question of state law which is novel and unsettled, and which is material to the resolution of this appeal.

In support of this motion, Crichlow refers the Court to her memorandum, attached and incorporated by reference.

Because the appellee is proceeding in state district court to evict Crichlow, she requests that the Court determine this motion on an emergency basis. A stay pending appeal has been requested in the bankruptcy court, but no decision has been made as yet. Under FRBP 8005, Crichlow cannot request a stay from this Court until the bankruptcy court has made its decision.

WHEREFORE Crichlow requests that the Court certify the question to the Supreme Judicial Court.

April 5, 2005

                                          Marie Maud Crichlow
                                          By her attorney,

                                          /s/    David G. Baker
                                          David G. Baker, Esq.
                                          105 Union Wharf
                                          Boston, MA  02109
                                          (617) 367-4260
                                          BBO # 634889