UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| In re:<br><br>Marie Maud Crichlow<br><br>Debtor | Chapter 13<br>Case No.  04-18735-RS |
|---|---|
| In re:<br><br>Marie Maud Crichlow<br><br>Debtor | BANKRUPTCY APPEAL<br><br>Civil Action No.  05-10653-MLW |

<u>MOTION FOR STAY PENDING APPEAL</u>

  NOW COMES Marie Maud Crichlow, debtor in the above captioned matter, by her attorney, and respectfully moves the Court for a stay of the order on appeal which granted relief from the automatic stay to Sandra DaSilva, and for reasons states that in the absence of a stay, there is a near certainty that DaSilva will evict her from her home.  Allowance of this motion would reduce or eliminate the expense to Crichlow (and thereby to the bankruptcy estate) and DaSilva that would result from eviction, and also eliminate the possibility that this matter would become moot, by maintaining the status quo.  Finally, since Crichlow has asked this Court to certify a question of state law to the Massachusetts Supreme Judicial Court, maintenance of the status quo would give effect to the answer provided.

  In further support of this motion, Crichlow refers the Court to the Memorandum of Law attached and incorporated by reference.

  As required by FRBP 8005, a motion for a stay was presented to the Bankruptcy Court but was denied.  A copy of the memorandum of decision is attached.

  WHEREFORE Crichlow requests that the order be stayed pending appeal.

Dated: _____May 13, 2005_____

Marie Maud Crichlow
By her attorney,

_____*David G. Baker*_____
David G. Baker, Esq.
105 Union Wharf
Boston, MA  02109
(617) 367-4260
BBO# 634889

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: <br><br> Marie Maud Crichlow <br><br> Debtor | | Chapter 13 <br> Case No. 04-18735-RS |
| Marie Maud Crichlow <br><br> Appellant <br> v. <br> Sandra DaSilva <br><br> Appellee | | BANKRUPTCY APPEAL <br><br> Civil Action No. 05-10653-MLW |

MEMORANDUM IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

Introduction

    Marie Maud Crichlow has filed an appeal to this Court, pursuant to 28 USC §158(a), of the order of the Bankruptcy Court for the District of Massachusetts which granted relief from the automatic stay to Sandra DaSilva. In addition, she moved the bankruptcy court pursuant to FRBP 8005 to stay the order pending appeal. However, the bankruptcy court denied a stay. Having first sought relief in the bankruptcy court, she has satisfied the procedural prerequisite for seeking relief in this court. Tooke v. Sunshine Trust Mortg. Trust No. 86-225, 149 BR 687 (M.D. Fla. 1992). This court considers the motion for a stay *de novo*. In re Public Service Co. of New Hampshire, 116 B.R. 347, fn2 (Bkrtcy.D.N.H. 1990)

    For the reasons stated herein, Crichlow believes that a stay is warranted and should be granted.

ARGUMENT

    In determining whether to grant a stay pending appeal, Courts consider four factors: 1) the likelihood of success on the merits of the appeal; 2) whether the moving party will suffer any irreparable harm if a stay is not granted; 3) whether the harm to the moving party in the absence of a stay is greater than the injury to the opposing party if the stay is granted; and 4) whether the public interest would be adversely affected by issuance of the stay. In re Miraj and Sons, Inc., 201 B.R. 23 (Bkrtcy.D.Mass. 1996); *see also* In re Alfaro, 221 B.R. 927 (1st Cir. Bap. (P.R.), 1998). While not all four factors need be given equal weight, Miraj, *quoting* Great Barrington Fair

and Amusement, Inc., 53 B.R. 237 (Bkrtcy.D.Mass. 1985), this memorandum will discuss each factor in turn. "These factors are not to be applied in a vacuum but instead must be viewed in light of the importance of the right of appeal and preservation of the status quo during the appeal." Miraj, *quoting* In re Howley, 38 B.R. 314 (Bkrtcy.D.Minn. 1984).

As Judge Boroff noted in Miraj, *supra*, it is improbable that a trial court will find that reversal of its own decision is likely. "Human nature – judicial or otherwise – does not go that far." Id. For that reason, Judge Boroff adopted the standard espoused by Judge Yacos in In re Public Serv. Co., 116 B.R. 347 (Bkrtcy.D.N.H. 1990), and held that this factor is met if the movant has a "substantial case" or a "strong case on appeal." Id. Judge Boroff granted a stay in Miraj. For the following reasons, Crichlow believes that she has a strong case on appeal and a stay should be granted in his case.

1. <u>Crichlow is likely to succeed on the merits of the appeal.</u>

The issue presented to the bankruptcy court was when property is "sold" within the meaning of 11 USC §1322(c)(1). Chapter 13 of the Bankruptcy Code provides a mechanism for curing and reinstating defaulted mortgages. Section 1322 provides for, *inter alia,* the mandatory and permissive terms of a debtor's Chapter 13 plan. Section 1322(c)(1) provides:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law--
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is **sold** at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law....

(emphasis added). The essence of the bankruptcy court's holding is that the execution by both parties of a Memorandum of Sale respecting a mortgage foreclosure auction constitutes a completed, actual sale of the property – i.e., that the property is "sold" within the meaning of §1322(c)(1) - regardless of whether the high bidder actually pays the consideration and regardless of when or whether a deed is delivered. *Memorandum at pg.14* ("… I conclude that were the Supreme Judicial Court confronted with the issue of when is a property, or rather the equity of redemption[1], sold at a foreclosure sale, it would conclude that the sale occurs when the memorandum of sale is signed.") In reaching that decision, the Court discounted or disregarded case law from the Supreme Judicial Court which holds that the Memorandum of Sale, in effect, is merely a contract for sale and the sale was not completed until the deed delivered (not necessarily

---

[1] Crichlow suggests that the first statement is correct, i.e., that the issue is when is the <u>property</u> sold, not when the equity of redemption is sold. Section 1322(c)(1) disregards state-law redemption rights. In re Beeman, *infra*.

3

recorded), *see, e.g.,* Beal v. Attleboro Sav. Bank, 248 Mass. 342 (1924), as well as DaSilva's explicit admission that as of the petition date, her obligation under the Memorandum of Sale was executory, *DaSilva memorandum in support of motion for relief at pg. 7* ("Commencing October 21, 2004 and continuing on October 27, 2004 (when the Debtor filed her petition), Ms. DaSilva had a contractual obligation to perform and steps to secure the conveyance of the property to her.") The Court also refused to consider Crichlow's argument that the fact that a deed had not been delivered[2] until several weeks after the petition date meant that as of the petition date, there had been no actual sale of the property, but that there was merely an executory contract between the foreclosing mortgagee and DaSilva.

Stated differently, the Court's holding is that termination of redemption rights is the legal equivalent of an actual sale under Massachusetts law, without reference to when, or to whom, a deed is delivered. The Court seemed to recognize that foreclosure is a process, but held that the process terminated at the time that the Memorandum of Sale was executed. This is the result of the Court's consideration of the phrase "conducted in accordance with applicable non-bankruptcy law", found in 11 USC §1322(c)(1).

The reality of foreclosure practice, however, is that the auction is not the end of the process, but is merely one step in the process which ends when the deed is delivered[3]. Beal v. Attleboro Sav. Bank, 248 Mass. 342 (1924) ("The sale was not executed until the deed was delivered, when the title passed to the purchaser."); *see also* In re Beeman, 235 B.R. 519 (Bkrtcy.D.N.H 1999); In re Taylor, 286 B.R. 275 (D.Vt. 2002) (although judgment of foreclosure under Vermont's strict foreclosure procedure terminated right to cure under state law, it did not terminate mortgagor's right to redeem, thus debtor could employ §1322(c)(1) to cure default) *and* In re Downing 212 B.R. 459 (Bkrtcy.D.N.J. 1997) (under New Jersey law, judicial foreclosure sale is not complete until sheriff conveys the deed). Viewed in this manner, it is indisputable that the process was not completed on the date of the petition. DaSilva admitted in her motion that on the petition date, she still had obligations to perform; the Memorandum itself has numerous contingencies applicable to both parties; DaSilva did not pay the consideration nor receive a deed until well after the date of the bankruptcy petition. However, the Court declined to consider the

---

[2] The argument pertains to when the deed is <u>delivered</u> by the seller to the buyer, *not* when the deed is <u>recorded</u>, as the Court seems to believe. A deed is valid as to the parties to it and recording in a registry of deeds is not necessary for a conveyance to take place since the recording only constitutes notice of the conveyance to the rest of the world.

[3] The motion for stay in the bankruptcy court was considered by a different judge from that which decided the original motion. The judge who denied the stay recognized that the auction is but an intermediate step in the overall foreclosure process, even if the auction forecloses the equity of redemption, but essentially held that the subsequent steps in the process are irrelevant. *Memorandum denying stay at pg. 4.*

argument as regards delivery of the deed, *see* decision on appeal at footnote 2. Thus the bankruptcy Court appears to view the process as terminating at the execution of the Memorandum of Sale, even if the buyer does not complete the sale and the property is eventually sold to someone else altogether. That this is a possibility is the logical result of the numerous contingencies in the Memorandum which provide agreed-upon remedies in case either party does not complete the sale.

In concluding that the sale was completed at the time of the execution of the Memorandum of Sale, the Court also focused on the word "conducted" in §1322(c)(1), and in doing so, noted that no evidence had been presented tending to show that the auction was not "conducted" in accordance with state law. Crichlow respectfully suggests that the Court instead should have focused on the word "sold", as it denotes the <u>completion</u> of a process. *See above*. On this point, Crichlow stands by her analysis of <u>White et al v. Macarelli et al</u>, 267 Mass. 596 (1929). The bankruptcy court stated that "*White* does not contain a reference to a foreclosure sale being actually completed by delivery of a deed." However, the *White* court stated that

> **Until conveyance is made** a mortgagor has an interest in the property and has rights against the mortgagee and the relation between them is not entirely at an end when the auction sale takes place. … **Until the contract of sale is completed** the mortgagor has an equity in the property, but it is not strictly accurate to designate this interest as an equity of redemption. The mortgagor, after a valid auction sale under a power of sale in the mortgage deed, has no right to redeem, although he has an ownership of the equity.

(emphasis added). The *White* court clearly is distinguishing between a sale at an auction and a conveyance, i.e., delivery of a deed; there is no language in a foreclosure Memorandum of Sale which constitutes words of delivery or conveyance. Indeed, the *White* court seems to recognize the concept of foreclosure as a process which is not at an end until a conveyance is made, i.e., a deed is delivered: "Until conveyance is made … Until the contract of sale [i.e.. the Memorandum of Sale] is completed … The mortgagor … after a valid auction sale, has no right to redeem, <u>although he has an ownership of the equity</u>." (emphasis added).

Although <u>Outpost Cafe, Inc. v. Fairhaven Savings Bank et al.</u>, 3 Mass.App.Ct. 1 (1975) did discuss the meaning of "sold" in the statute, it only holds that the property is "sold" *for purposes of redemption rights* at the time the Memorandum of Sale is executed ("Accordingly, we hold that the plaintiff's equity of redemption was barred under the concluding clause of G.L. c. 244, s 18 , at least as early as the point in time when the memorandum of sale was executed with the purchaser at the foreclosure sale."). This does not mean that the process of foreclosure

5

was complete at that time; the mortgagee must still deliver a deed.  In Ideal Financial Services, Inc. v. Zichelle & others, 52 Mass.App.Ct. 50 (2001), the Appeals Court considered cases such as Schanberg v. Automobile Ins. Co. of Hartford, 285 Mass. 316 (1934).  The Schanberg court held that until a deed is given, "the auction sale was only a contract of sale …".  The Ideal court noted that whether a deed had been delivered was – and remained - a highly significant question, especially in Schanberg, and is "predicated upon well established principles of Massachusetts property law."  The Court went on to hold that until the mortgagee (or, presumably, a purchaser at the auction sale) has purchased the property by foreclosure deed (not merely a Memorandum of Sale), the mortgagee has an insurable interest in the real property as a mortgagee.  Once the deed is delivered, however, the mortgagee becomes the owner of the property and must obtain a new insurance policy as owner of the property.  By negative inference, therefore, the mortgagor remains the owner of the property until the deed is delivered, even if the mortgagor does not have redemption rights.  See also White et al v. Macarelli et al, 267 Mass. 596 (1929) ("The mortgagor, after a valid auction sale under a power of sale in the mortgage deed, has no right to redeem, although he has an ownership of the equity.")  See In re Beeman, 235 B.R. 519 (Bkrtcy.D.N.H 1999); see also In re Burns 183 B.R. 670 (Bkrtcy.D.R.I. 1995).

     Even if Massachusetts law were otherwise, 11 USC 1322(c)(1) would preempt Massachusetts law.  This section was enacted to establish a nationwide, uniform rule as to the point at which a debtor may no longer cure a mortgage default.  The Bankruptcy Code, being federal law, preempts contrary or conflicting state law.  Id.  See also In re Weinstein, 164 F.3d 677; Certiorari Denied June 24, 1999, 527 U.S. 1036, 144 L. Ed. 2d 794, 119 S. Ct. 2394 (1st Cir. 1999) (§522 of the code preempts conflicting state law; invalidating part of Masachusetts' homestead statute).  In Beeman, the court was considering New Hampshire law, which, like Massachusetts, provides for foreclosure by power of sale contained in a mortgage.  The court noted that under New Hampshire law, title to the buyer at a foreclosure auction does not pass until the deed is recorded, even though the right to redeem or to cure defaults under state law is terminated at the auction sale.  As a result, the debtor/mortgagor retains rights in the property that constitute a "federal interest".   Thus, although the interest of the states in the integrity, efficiency and clarity of their mortgage foreclosure processes is a point to be considered (as the bankruptcy court did in its decision, quoting from In re Bobo, 246 B.R. at 458 (Bkrtcy.D. Dist.Col. 2000)), §1322(c)(1) is a clear indication of congressional intent to preempt that interest.  See also In re Benson, 293 B.R. 234 (Bkrtcy.D.Ariz. 2003) (" It is not at all unusual for the Bankruptcy Code to disregard state law cure rights, because the Bankruptcy Code frequently provides federal cure rights that do not exist under state law, and may exist notwithstanding state

law."; also concluding that under exercise of power of sale in mortgage, sale was not complete until purchase price was paid.)  Thus, even if the execution of the Memorandum of Sale means that the property has been "sold" under state law, §1322(c)(1) preempts state law and provides a debtor with the right to cure the default until such time as the debtor no longer has title to the property.

Curiously, the judge which denied the stay said: "Absent substantial evidence of legislative intent to the contrary, it would strain credulity – my own, at least – to conclude that Congress meant by §1322 (c)(1) to override state mortgage laws with respect to the termination of the equity of redemption."   In Beeman, the bankruptcy court had no difficulty whatsoever in concluding precisely that. 235 B.R. at 524.  *See also* In re Taylor, 286 B.R. 275 (D.Vt. 2002) (collecting cases and adopting the Beeman court's position that §1322(c)(1) was intended to create a uniform federal standard, and that the statute "would hardly bring coherence to the variety of state foreclosure laws if its application turned on each state's foreclosure procedures.") Taylor is instructive also because it discusses strict foreclosure under Vermont law and reaches the same result as Beeman reached, even though New Hampshire law allows for foreclosure by sale, as does Massachusetts.  Ultimately, as the court in Benson, *supra*, noted, it is not at all unusual for federal law, including the bankruptcy code, to override conflicting state laws.

For all of these reasons, Crichlow believes she has a strong, substantial case, Miraj, *supra,* and a stay should be granted.


II.     The balance of harms favors granting a stay.

The second and third factors in the Miraj analysis essentially require the Court to balance the harms between the parties.  If a stay is denied, Crichlow will be required to find a new home and incur the expense of moving; may be required to store some of her furniture; and her teen-age children will suffer considerable disruption in their lives and schooling.  DaSilva will incur similar costs of moving, and her family will suffer similar disruption.  In the event that Crichlow prevails on appeal, these costs (both financial and psychological) will be doubled for both parties, as Crichlow will have the right to move back into the home and DaSilva will have to move out.

The bankruptcy judge who denied the stay concluded that the balance of harms favored DaSilva, saying that DaSilva "will be squeezed by her inability to use her current residence in order to alleviate the cost[4] of financing and maintaining the new" and that Crichlow "will not

---

[4] This seems to conclude that DaSilva intends to rent out her "current residence" in order to pay the costs of the new.  Crichlow's counsel does not recall anything in the record which supports that conclusion.

7

likely be able to make DaSilva whole for any loss she might sustain on account of this dual burden". However, DaSilva sought and was granted an administrative claim in the amount of $2,000 per month. Initially Crichlow objected to the claim, but withdrew the objection when DaSilva showed that the amount is reasonable. DaSilva's claim includes <u>only</u> her expenses as relates to Crichlow's home. Thus DaSilva's expenses as relates to Crichlow's home are being paid by Crichlow; there is no "dual burden" whatsoever and DaSilva is not being burdened by any expenses other than the expenses she would normally have, i.e., expenses related to her "current residence". Crichlow is *already* making DaSilva whole. The judge which denied the stay was clearly erroneous in concluding that the balance of harms favors DaSilva.

As worst, the balance of harms may appear about equal. In reality, however, the balance favors Crichlow. In denying a stay, the bankruptcy judge seems to have suggested that Crichlow could finance the purchase of a new home with the money she currently escrowing with her attorney or paying DaSilva for her administrative claim. Again, the reality is different. There is nothing in the record that suggests that Crichlow has any money for a down payment, nor is there anything in the record that suggests that Crichlow, as a debtor in a bankruptcy case, could get a mortgage, even in these days of relatively easy credit. Crichlow would most likely be forced to find a rental apartment or house, and to do so may be forced to relocate at some distance from her present work and her children's schools. This would be an enormous burden and disruption in Crichlow's life and that of her children.

For this reason, Crichlow avers that the balance of harms favors her.

III.    <u>Public policy considerations favor a stay.</u>

The bankruptcy judge concluded that that the public interest is not affected on this appeal. However, it is well settled that public policy, as expressed by Congress, favors allowing debtors to use Chapter 13 to repay their debts and keep their property. *See* <u>In re Kuntz</u>, 233 BR 580 (1st Cir. BAP 1999); <u>Taylor</u>, *supra*. *See also* <u>Grundy Nat. Bank v. Stiltner</u> 58 B.R. 93 (W.D.Va. 1986) (holding, in essence, that where the purpose of filing a chapter 13 petition was to avoid foreclosure and cure mortgage arrears, the principal residence is *per se* necessary to an effective reorganization.) Because Crichlow's purpose in filing a chapter 13 petition was to cure her mortgage arrears, as permitted by §1322(c)(1), that policy is also a reason why Crichlow is likely to be successful on appeal, since §1322(c)(1) was enacted to further that congressional policy. <u>Id.</u>

The importance of the right of appeal and maintenance of the *status quo* during the appellate process, <u>In re Miraj and Sons, Inc.</u>, 201 B.R. 23 (Bkrtcy.D.Mass. 1996), are also

important considerations. At present there is no impediment to DaSilva evicting Crichlow[5]. If Crichlow is actually evicted before this court decides the appeal, it may well be rendered moot. See Jones v. Noonan, 53 F.3d 327 (1st Cir. 1995) (unpublished decision; text on Westlaw. Although unpublished, it is directly on point and Crichlow requests permission to cite it.) Jones is distinguishable from the present case because Crichlow is actively seeking a stay, the state court decision is not yet final and no writ of execution has issued from the state court. In addition, if Crichlow's position is correct, DaSilva violated the automatic stay of 11 USC §362 when accepted the deed. As such, the conveyance was void. Actions taken in violation of the automatic stay are void, not merely voidable. In re Soares, 107 F.3d 969 (1st Cir. 1997). Public policy favors decision of controversies on the merits, not by the controversy being rendered moot. Accordingly, this court should grant a stay.

IV.     The issue should be decided by the Supreme Judicial Court

Given that the issue turns upon interpretation of state law and that there is no truly clear precedent from the Supreme Judicial Court of Massachusetts ("… I conclude that were the Supreme Judicial Court confronted with the issue …"), Crichlow has requested that this Court certify the question to the Supreme Judicial Court pursuant to SJC Rule 1:03, which provides *inter alia* that the federal District Court may do so. See Dwyer v. Cempellin, 189 B.R. 230 (D.Mass. 1995) (certifying question regarding homestead exemption); US Steel v. M. DeMatteo Cont. Co, 315 F.3d 43 (1st Cir. 2002). In US Steel, the First Circuit noted US Supreme Court precedent holding that certification is particularly appropriate where the question at issue is novel, and the law unsettled. Given the conflicting decisions from Massachusetts appellate courts, requiring this Court to attempt to predict how the state Supreme Judicial Court would answer the question if confronted with it, Crichlow respectfully suggests that the question is novel and the law is unsettled. Thus it seems particularly appropriate to stay the bankruptcy Court's decision pending an answer to the question by the Supreme Judicial Court.

---

[5] DaSilva proceeded to state court in order to evict Crichlow. The issue was presented to the state court judge, but that court essentially deferred to the bankruptcy judge's decision on the motion for relief from stay.

## CONCLUSION

Granting a stay will appropriately balance the risk of harms to Crichlow and DaSilva; will maintain the status quo; and will also serve public policy. Given that Crichlow has a strong case on appeal, she should not be required to forfeit her home pending appeal, especially since DaSilva will suffer no harm. In addition, the novelty of the issue and the unsettled state of the law warrant staying the order pending clarification of the law by the Supreme Judicial Court. Crichlow respectfully requests that a stay be granted.

Dated: _____May 16, 2005_____

                                        Marie Maud Crichlow
                                        By her attorney,

                                        _____*David G. Baker*_____
                                        David G. Baker, Esq.
                                        105 Union Wharf
                                        Boston, MA 02109
                                        (617) 367-4260
                                        BBO# 634889

## CERTIFICATE OF SERVICE

The undersigned hereby states upon information and belief that the attached Motion for Stay Pending Appeal was served upon the appellant by the court's CM/ECF system.

                                        _____*David G. Baker*_____
                                        David G. Baker, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| In re | |
|---|---|
| MARIE MAUD CRICHLOW,<br><br>Debtor | Chapter 13<br>Case No. 04-18735-RS |

MEMORANDUM OF DECISION ON
MOTION OF DEBTOR FOR STAY PENDING APPEAL

The Debtor, Marie Maud Crichlow, has asked this Court to stay pending appeal an order granting to Sandra DaSilva relief from the automatic stay to evict the Debtor from the property in which the Debtor resides. DaSilva opposes the motion. For the reasons set forth below, the Court will deny the requested stay.

**Facts and Procedural History**

The facts and procedural history are as follows. As of October 21, 2004, the Debtor owned and resided in the real property at 59 Amor Road, Milton, Massachusetts, but her interest in that property was subject to a mortgage, and that mortgage was in distress. On October 21, 2004, the mortgagee conducted a foreclosure sale of the property. Sandra DaSilva was the high bidder at foreclosure, and, on that same day, she and the foreclosing mortgagee signed a Memorandum of Terms and Conditions of Sale (the "Memorandum"). The Memorandum provided that the "sale shall not be deemed completed until the Buyer has made his or her deposit and has signed this Memorandum of Sale." The record does not indicate when and whether the Buyer made her deposit. The Debtor filed her petition for relief under Chapter 13 of the Bankruptcy Code on October 27, 2004, thereby commencing this bankruptcy case, and only later (the precise date is not clear) did DaSilva pay the balance of the purchase price to the mortgagee and receive from the mortgagee the deed to the property. She recorded the deed on November

17, 2004. That same day, the Debtor had filed a Chapter 13 plan in which she proposed to cure the arrearage on the mortgage that had been foreclosed upon.

DaSilva then moved in the bankruptcy case for relief from the automatic stay to evict the Debtor. The Debtor opposed the motion, arguing that, because the mortgagee had not actually transferred the property to DaSilva by the date of the Debtor's bankruptcy filing, the property had not yet been sold, and therefore § 1322(c)(1) of the Bankruptcy Code treated the sale as incomplete and permitted the Debtor to cure her mortgage arrears through the Chapter 13 plan and, in essence, to treat the foreclosure and subsequent signing of the Memorandum as *not* having terminated her equity of redemption, notwithstanding Massachusetts law to the contrary.[1] On February 16, 2005, the Court (Hillman, J.) granted relief from the automatic stay to evict the Debtor. In the memorandum of decision he issued in support of the order, Judge Hillman disagreed with the Debtor, ruling that, for purposes of § 1322(c)(1), a Massachusetts foreclosure sale would be deemed complete upon the signing of the memorandum of sale, because it is this event that, under Massachusetts law, terminates the mortgagor's equity of redemption. Judge Hillman concluded that, as of the date of her bankruptcy filing, the Debtor's equity of redemption had been terminated; that she therefore no longer had an ability to cure her mortgage through a Chapter 13 plan; and, accordingly, that it was appropriate to grant DaSilva relief from the stay to evict.

The Debtor timely appealed from the order and elected to have the appeal heard by the United States District Court. The record on appeal was transmitted to the District Court on March 31, 2005. A briefing schedule has been set, but the Debtor has moved to continue it

---

[1] Under § 1322(c)(1), the Debtor's default may be cured "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1).

2

pending resolution of a second motion he has filed in the appeal, a motion to have certain issues on appeal certified to the Massachusetts Supreme Judicial Court.

After she received relief from the automatic stay to evict, DaSilva sought and obtained an order in the state court to evict the Debtor; and she intends to enforce that order upon expiration of the time to appeal from it.

In the meantime, the Debtor and her teenage children continue to occupy the property. The Debtor is and has been setting aside $3,100 per month (into an account held by her attorney) in order to fund payments to her mortgagee, should she prevail on her appeal and her plan be confirmed. However, she is under no obligation to be setting aside these payments. Also, by virtue of an order of this Court entered on April 4, 2005, DaSilva's administrative claim for postpetition use and occupancy of the property was allowed in the amount of $7,000 for use and occupancy up to March 1, 2005, and the Debtor was further ordered to make monthly use and occupancy payments in the amount of $2000 per month—which, according to DaSilva, was the fair rental value of the premises—commencing March 1, 2005. (Though the Debtor initially contested the monthly payment obligation, she has since conceded that $2000 per month constitutes fair rental value.) It is not clear whether she is current on these obligations to DaSilva. And the Court is skeptical that the Debtor has the wherewithal to fund both monthly use and occupancy payments of $2,000 and monthly set asides of $3,100 at the same time.

DaSilva bought the property with the intention of occupying it with her own family, and she is understandably determined to do so. She incurred approximately $500,000 in debt to purchase the property, and that debt is secured by mortgages on her current home and on her father's home. She remains responsible for servicing this debt, and for taxes, insurance, and maintenance of the property, even while she cannot occupy the property. This imposes on her a

substantial financial burden because she cannot sell or rent her current home while the Debtor continues to occupy the Amor Road property.

## Discussion

A party moving for stay pending appeal "must establish that there is a strong likelihood of success on the merits of its appeal; that he will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay." *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 804 n.31 (1st Cir. 1991); *In re Miraj and Sons, Inc.*, 201 B.R. 23 (Bankr.D.Mass. 1996). The public interest prong of this standard is not implicated here, but the Court's analysis as to the three remaining requirements is set forth below.

### 1. Likelihood of Success on Appeal

While the Debtor's appeal is not frivolous, she does not have a strong likelihood of success on appeal or, in the formulation the Debtor urges, a "substantial case" or "strong case on appeal." Judge Hillman's memorandum of decision is solid in its reasoning. As Judge Hillman makes clear, under long-settled Massachusetts law and conveyancing practice, a debtor's equity of redemption is terminated upon the signing of the memorandum of sale. It was this event that effectuated, in essence, a transmittal to the mortgagee of the equity of redemption. Though the signing of the memorandum of sale was not the final step between the mortgagee and the buyer at foreclosure, the signing of the memorandum *was* the final act insofar as the mortgagor's equity of redemption was concerned. Indeed, it is this event that makes the sale a "foreclosure" at all: under Massachusetts law, it is (undisputedly) the signing of the memorandum that forecloses the

equity of redemption.[2] The remaining events between mortgagee and buyer have no further foreclosing effect. Absent substantial evidence of legislative intent to the contrary, it would strain credulity—my own, at least—to conclude that Congress meant by § 1322(c)(1) to override state mortgage laws with respect to the termination of the equity of redemption. This would make the post-foreclosure status of the equity of redemption dependent on whether the Debtor filed a petition under Chapter 13 of the Bankruptcy Code and even on whether the Debtor elected to use § 1322(c)(1) in his or her Chapter 13 plan.[3] For these reasons and those articulated by Judge Hillman, I conclude that the Debtor's likelihood of prevailing on appeal is neither strong nor substantial.

### 2. Irreparable Harm to Debtor

If the stay were not granted, the Debtor would be harmed by having to relocate her family for an indefinite time, which would be disruptive to her family's life, but not likely a cause of irreparable harm. Financially, this relocation would not be prohibitive; if the Debtor were to relocate, she could finance the new residence with the $2,000 per month that she is now obligated to pay to DaSilva, augmented (if necessary) by some of the $3,100 she is setting aside each month in anticipation of funding the Chapter 13 plan that she has proposed. Of course, to the extent that she needs to dip into this $3,100, she will be compromising her ability to honor

---

[2] See BLACKS LAW DICTIONARY 646 (6th ed. 1990), defining "foreclose" as "method of terminating mortgagor's right of redemption" and "foreclosure" as "to shut out, to bar, to destroy an equity of redemption."

[3] Other possible treatments of the mortgagee's secured claim in the plan would not involve § 1322(c)(1) and therefore would not revive the equity of redemption. Moreover, a plan can be amended at any time during the life of the case, so the status of the equity of redemption could remain in suspense for years, until the case was closed.

her obligations under the plan to cure and remain current on the mortgage. Still, the Debtor has not shown that it would be necessary to dip into the $3,100 to fund alternate living arrangements. Nor has she made even an offer of proof that the plan she has proposed is financially feasible.

### 3. Comparison to Harm to DaSilva

The harm that DaSilva would suffer is more certain. She has undertaken significant financial obligations to fund the purchase of this property, and, for as long as she is prohibited from moving into it, she will be squeezed by her inability to use her current residence in order to alleviate the cost of financing and maintaining the new. Given that the Debtor is in bankruptcy, the Debtor will not likely be able to make DaSilva whole for any loss she might sustain on account of this dual burden. On balance, the Court concludes that the harm that DaSilva would suffer if a stay were granted is more significant and more likely irreparable than that which the Debtor would suffer if the requested stay were denied.

Given this balance of harms and the conclusion above as to the likelihood of success on appeal, the Court concludes that the stay should be denied. A separate order will enter denying the motion for stay pending appeal.

Date: May 13, 2005

Robert Somma
United States Bankruptcy Judge

cc: David Baker, Esq., for Debtor
    Leslie Sammon, Esq., for Sandra DaSilva
    Doreen Solomon, Esq., Chapter 13 Trustee